UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

_____

| | |
|---|---|
| JOHN J. SMITH JR.,<br>          Plaintiff<br><br>v.<br><br><br>CITY OF HOLYOKE,<br>OFFICERS JAMES PARNELL, CRYSTAL<br>MANZI, SAMUEL DELVALLE<br>AND MSP TROOPER THIAGO O.MIRANDA,<br><br>          Defendants, | )  CIVIL ACTION NO.  3:17-cv-<br>)<br>)<br>)<br>)      **COMPLAINT AND DEMAND**<br>)      **FOR JURY TRIAL**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

_____)

## INTRODUCTION

1.     This is a civil rights action on behalf of Plaintiff John Smith ("Mr. Smith") against
       Holyoke police Officers James Parnell ("Officer Parnell") Officer Crystal Manzi
       ("Officer Manzi"), Officer Samuel Del Valle ("Officer Del Valle"), Massachusetts State
       police trooper Thiago O. Miranda ("Trooper Miranda") and against the City of Holyoke
       as a result of unreasonable force during his June 25, 2014 arrest in Westfield,
       Massachusetts.  The officers inflicted serious injuries including multiple facial
       lacerations, a fracture of the anterior and posterolateral and medial wall of the left
       maxillary sinus extending to the left orbital wall, three rib fractures and subcutaneous
       emphysema. These officers battered Mr. Smith without cause at the conclusion of a motor
       vehicle pursuit.  When Mr. Smith's car came to a final stop, his car was boxed in and he
       posed no reasonably perceptible threat of harm to any person when Officer Parnell struck
       him in the fact with his service pistol.  Mr. Smith was dragged out of his car by his hair
       and arms and thrown to the ground where he was beaten with closed fists at least 10 times
       by MSP Trooper Miranda, was tasered and kicked by others, and beaten until – and even
       after – he lost consciousness. Plaintiff was left with lasting injuries. He was charged with
       resisting arrest and assault and battery with a dangerous weapon (his car) without
       probable cause. These charges were dismissed by the Commonwealth.

## JURISDICTION AND VENUE

2.     Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983 alleging violations of
       the Fourth and Fourteenth Amendment to the United States Constitution and also
       common law torts.  Titles 28 U.S.C. § 1331 and 1343 provide federal question
       jurisdiction over all federal claims and 28 U.S.C. § 1367 provides supplemental
       jurisdiction over state law claims.

3.    Venue pursuant to 28 U.S.C. Section 1391 is properly placed in the Federal District Court's Western Division because it is where the parties reside and where the events complained of occurred, namely, the western division inside of the Commonwealth of Massachusetts.

## PARTIES

4.    Plaintiff, John J. Smith Jr., is a citizen of the United States and a resident of the Commonwealth of Massachusetts, in the County of Hampden, and resides in Westfield, Massachusetts.

5.    Defendant City of Holyoke is a duly incorporated municipality with a usual place of business abode at 536 Dwight Street, Holyoke, Massachusetts.

6.    The defendant James J. Parnell ("Officer Parnell") was at all pertinent times a sworn police officer of the Holyoke Police Department ("HPD") who resides at 57 Merrick Ave. Holyoke, Massachusetts.

7.    The defendant Crystal Manzi ("Officer Manzi") was at all pertinent times a sworn police officer of the Holyoke Police Department ("HPD") who resides at 187 Pondview Drive, Chicopee, Massachusetts.

8.    The defendant Samuel Delvalle ("Officer Delvalle") was at all pertinent times a sworn police officer of the Holyoke Police Department ("HPD") who resides at 66 Roosevelt Avenue, Springfield, Massachusetts.

9.    The defendant Thiago O. Miranda ("Officer Miranda") was at all pertinent times a sworn Trooper with the Massachusetts State Police ("MSP") who resides at 44 Colonial Road, Webster, MA 01570.

10.   At all pertinent times the City of Holyoke ("The City") was the employer of Officers Parnell, Manzi, and Delvalle and each individual defendant acted or purported to act, in the course of his/her employment.

11.   At all pertinent times Officer Miranda was employed by the Commonwealth of Massachusetts and was employed as a trooper for the Massachusetts State Police ("MSP").

12.   Each individual defendant is sued in his personal capacity.

## FACTS

13.     Each of the previous paragraphs is incorporated as if fully set forth herein.

14.     At all pertinent times each defendant acted as alleged in this Complaint under color of the laws, statutes, ordinances, and/or regulations of the Commonwealth of Massachusetts and/or of the City.

**The incident:**

15.     On June 25, 2014 Mr. Smith, a part time window cleaner, had finished cleaning windows for a customer in Holyoke.

16.     While at Appleton Street and Elm Streets Mr. Smith had a conversation with a female who invited him to her apartment.

17.     When he left the building Smith encountered Holyoke Police Officer Jabet Lopez who questioned him on what he was doing.  Smith told him he had a conversation with a female and he walked towards his car.

18.     When he got to his car Smith saw Officer Manzi, who apparently was watching him, get out of a police cruiser and say to him: "Hey motherfucker where do you think you are going?"

19.     Mr. Smith replied that he was going to take care of his mother who lives in Westfield.

20.     "Oh no you are not," Officer Manzi said, and Mr. Smith saw her making a motion to draw her service weapon.

21.     Mr. Smith was frightened, thought he was going to get shot, got into his car, started the engine and began driving away.

22.     Officers then allegedly activated their overhead lights in order to begin pursuing Mr. Smith although Mr. Smith had already driven some distance.

23.     As he tried to get away from Holyoke, Mr. Smith observed another officer standing behind a police vehicle with his weapon drawn and aimed at his vehicle.

24.     Mr. Smith, believing he was going to be shot, drove away and onto Route 91 Southbound as police pursued him.

25.     Other police departments in addition to the HPD joined in Smith's pursuit.

26.     Officers from the Westfield police department ("WPD") and the Massachusetts State Police joined along with an Air Support MSP helicopter unit which videotaped the police pursuit.

27.     When Mr. Smith got into the Town of Westfield, members of the WPD deployed "Stop-Sticks" to flatten Smith's tires.

28.     Mr. Smith's tires were disabled by the stop-sticks and the speed of his car was reduced to slow speed on four flat tires.

29.     Two HPD officers, Bartolomei and Welch ended the pursuit by using their marked HPD vehicles to side swipe in order to stop Mr. Smith car.

30.     Officers Bartolemei and Welch first side-swiped Smith's car and they stopped his car.

31.     Mr. Smith's car was blocked from every angle by police so that he could no longer escape and his car came to a complete stop.

32.     Two police cars blocked Mr. Smith's car, side-to-side and two cars blocked the front while three police cars blocked the back.

33.     MSP Trooper Thiago, Trooper Tucker and a third Trooper, Danho also arrived and approached Smith's vehicle.

34.     Mr. Smith's front driver and passenger windows were opened and he had no weapons.

35.     Mr. Smith posed no threat, actual or reasonably perceptible, to Officer Parnell, the public, or to any other officers present.

36.     Officer Parnell approached Smith's driver-side window as Smith remained seated in the vehicle and pistol whipped him in the face without cause or legal excuse.

37.     Trooper Miranda broke the rear window of the vehicle with a gun.

38.     A third officer deployed a police canine and released the dog into the front passenger area of the car.

39.     Officer Parnell knew from his training and from stated HPD policy that striking a person with a loaded gun in the head could cause grievous injury or even death and he battered Smith in this way intending to inflict death or serious on Smith.

40.     No reasonable officer would have viciously battered a non-threatening person as Officer Parnell did to Mr. Smith.

41.     Parnell's conduct served no lawful purpose, nor could any officer have reasonably believed it would have served any lawful purpose.

42.   At least three officers then dragged Smith from the vehicle through the driver's side window by his hair and arms.

43.   Smith gave no sign of threat or resistance; his body appeared to be limp.

44.   Officers swarmed around him, dragged him away from the vehicle, and threw him violently thrown to the ground.

45.   As this took place Trooper Miranda ran towards Mr. Smith and quickly got rid of his gun, leaving it unattended on top of an MSP cruiser feet away from Mr. Smith.

46.   Mr. Smith showed no sign of consciousness at this time and no reasonable officer would have believed that he posed a threat to anyone.

47.   A group of officers including Troopers Tucker and Miranda took control of Mr. Smith, with Trooper Miranda pounding him with a closed fist 10 times or more.

48.   Trooper Miranda knew from his training and from stated MSP policies that striking an unconscious person with his fists could cause grievous injury or even death, but he assaulted Smith intentionally to inflict injury, extreme pain, suffering, and humiliation.

49.   No reasonable officer would have viciously battered a non-threatening person as trooper Miranda did to Mr. Smith, and such conduct served no lawful purpose nor could an officer have reasonably believed otherwise.

50.   Other officers surrounded Smith, some of them kicking him with shod feet.

51.   Trooper Miranda's beating of Mr. Smith was captured by the MSP Air support helicopter video camera.  See **Ex. 1** (to be filed manually.)

52.   While Mr. Smith's limp body was beaten by trooper Miranda and kicked, HPD officers Manzi and Del Valle tased him repeatedly and MSP Trooper Tucker kicked him.

53.   Officers Manzi and Del Valle intended their actions to cause Mr. Smith pain, suffering and humiliation.

54.   Both Manzi and Miranda had no reason to believe that tasing Smith as they did served any lawful purpose, they knew this conduct could cause serious injury, and they did it intentionally in order to inflict needless pain, suffering and humiliation on Mr. Smith.

55.   When members of the MSP Air Support crew realized that Trooper Miranda was relentlessly beating Mr. Smith, the camera was intentionally turned away from the scene so that it would not continue recording the unlawful, assaultive conduct of the police officers against a helpless prisoner in their custody.

56. Seconds later the camera returned to focus on Smith's limp body but then, as Trooper Danho resumed the assault by kicking Mr. Smith, the camera panned away once again.

## **Falsehoods and Omissions in Reporting of the Incident**

57. In an effort to hide their unlawful and unreasonable use of force the defendants submitted a series of false reports regarding critical aspects of the incident, including, but not limited to, misrepresenting the level of force used and the level of resistance encountered.

58. Although Officer Parnell used his gun to hit Mr. Smith and was required to document this event in his police report (that he used his gun as a striking weapon), he instead prepared a false report in which he failed to document that he struck Mr. Smith with his gun.

59. After failing to report striking Smith with a gun, Parnell falsely reported Mr. Smith resisted.

60. Instead of filing a truthful report Officer Parnell opted for the following false narrative: "Officers approached the vehicle and attempted to remove Smith from the driver's seat however, he began to resist. Officers were able to remove Smith from the vehicle and place him onto the ground where he continued to struggle. Officers Manzi and Delvalle attempted to use their tasers in the drive stun however it was ineffective. Officers were attempting to gain control of Smith's arms however he had his right arm under him and was refusing to comply with orders to put his arms behind his back."

61. Parnell also falsely claimed "I began to remove Smith's right arm from under his head however Smith was tensing up and moving his head from side to side. I was eventually able to get Smith's right hand out and bring it back behind his back. At this time Officer Padilla was able to place Smith into handcuffs."

62. Parnell made these statements knowing full well they were false.

63. Trooper Miranda also reported falsely as follows: "…[M]r. Smith was finally able to be removed from the Volvo and taken to the ground, all while Mr. Smith continued to throw kicks at officers around him. I then went over and attempted to help subdue Mr. Smith and at this time I noticed what appeared to be an item under his belt line that was similar to a magazine pouch, I then also observed Mr. Smith attempting to kick and fight officers by swinging his elbows and fists uncontrollably. I wanted to make sure that he did not have access to that pouch on his belt, and as I went down to the ground to secure that item his body parts continued to flail violently, at that moment I struck Mr. Smith few times on the side in order to get him to retract his arms from the location that I was trying to control. After a few strikes it appeared to be successful as he took his arms away from that area. It took several officers to finally get Mr. Smith handcuffed and controlled, and once the struggle was over I was able to identify the belt item as double multi tool utility holder."

64.    Similarly, Officers Manzi and Del Valle misrepresented the level of resistance of Mr. Smith before they Tasered him.

65.    After the beating Mr. Smith regained consciousness and saw blood dripping from his body into a pool on the ground as he heard officers berating him as a "fucking piece of shit… how do you like that. You're not going to run from us mother fucker…where's your martial arts now."

66.    An ambulance arrived on the scene and as paramedics put him in that vehicle Smith heard one of them tell officers the closest hospital was in Westfield, the Town where the arrest occurred, but an officer answered that the paramedics must instead take Smith to Holyoke.

67.    At the Holyoke Hospital ("HH") Mr. Smith was guarded by Officers Padilla and Jabet Lopez.  Officer Padilla assaulted him with a backhanded blow to the shoulder area close to the head, then told Smith to "shut the fuck up" when Smith asked why he had done this.

68.    At the time of his arrest Mr. Smith had close to $800 dollars on him.  When got to the police station he only had $42.00.

### **Injuries suffered by Mr. Smith**

69.    At the hospital Smith was found to have multiple injuries, including lacerations to the head, face, chest, abdomen, a fracture of the anterior and posterolateral and medial wall of the left maxillary sinus, and hemorrhagic fluid in the left maxillary sinus.  The fracture extended to the posterolateral left orbital wall with slight displacement. **Ex. 2**.

70.    Smith was also diagnosed with a small right sided pneumothorax, small contusion and atelectasis of the right lung as well as rib fractures and subcutaneous emphysema.

71.    Because of the seriousness of injuries Smith was transferred to Baystate Medical Center ("BMC") in Springfield, a trauma hospital.

72.    At BMC Smith was classified as a category 2 trauma patient; he complained of facial pain with a lacerations above his right eye and cheekbone and had "bruising all around [the] face."

73.    At BMC a total of 3 rib fractures were confirmed, with a right sided pneumothorax caused by trauma. **Ex. 3**.  Smith's dentures were also dislodged and broken due to his being kicked in the face.

74.    He was hospitalized at BMC State until June 26.

75.   He continues to suffer medical sequela from his injuries including but not limited to headaches, nerve damage, blurred vision, and other symptoms associated with the beating and has incurred expenses for necessary medical treatment of his injuries in excess of $14,919.56 – all as a direct result of defendants' violent misconduct under the color of law.

## Municipal Liability of the City of Holyoke

76.   On information and belief the City of Holyoke failed to investigate and discipline any of the officers that came in contact with the plaintiff.

77.   Prior to this incident and continuing the City had a policy, usage and custom of not investigating complaints of police misconduct and in particular those that involved excessive force and by failing to respond with appropriate training, counseling, supervision or disciplining officers in order to minimize and prevent such incidents.

78.   Upon information and belief the City had a custom and practice of condoning code of silence among officers by which it was understood that an officer witnessing misconduct by another officer(s) would not report it notwithstanding a duty to do so.

79.   Upon information and belief, the HPD had a custom and practice of making it difficult for citizens to file complaints about the conduct of HPD officers and of failing to investigate and discipline officers for the use of excessive force.

80.   Upon information and belief, the HPD and its Chief failed to monitor the use of force by failing to require officers to explain in writing injuries to people arrested.

81.   Upon information and belief, HPD officers routinely submitted injured prisoner reports that contained incomplete information that underreported the use of force, the circumstances that necessitated force and the nature of an arrestee's injuries.

82.   Because officers knew nothing would happen to them in the event of a misconduct complaint, and because they knew that the filing of false reports, use of force reports or incomplete prisoner injury reports incurred no consequence, they had no concern that the use of excessive force would lead action against them.

83.   The City, its decision maker and its policymakers failed to ensure the above listed Defendants' followed HPD policies, procedures, comply with acceptable police practices or acted consistently with the state and federal applicable constitutional protections available to Mr. Smith.

84.   The City and the misconduct of the Chief of police included but was not limited to the following:

   a)   Systemic failure to ensure that Defendants' and HPD officers did not fabricate evidence.

b) Systemic failure to ensure that Defendants' and HPD officers prepared truthful reports.

c) Systemic failure to ensure that Defendants' and HPD officers complied with departmental policies and procedures.

d) Systemic failure to ensure that Defendants' and HPD officers used reasonable levels of force upon individuals and civilians their officers came in contact with.

e) Systemic failures to ensure that Defendants' and HPD officers complied with their obligations regarding the processing, inspection, documentation and investigation of injured prisoner reports under M.G.L. c. 276 § 33.

f) Systemic failures to ensure Defendants' and HPD supervisory staff investigate complaints of civilian injuries at the time of booking.

g) Systemic failures to ensure Defendants' and HPD supervisory staff provide prompt medical care to injured prisoners at the time of arrest and/or booking.

h) Systemic failures to ensure Defendants' and HPD supervisory staff discipline those officers who use unreasonable force.

i) Systemic failures to ensure defendants' and HPD supervisory staff retrain those officers who use unreasonable force.

j) Systemic failures to ensure defendants' and HPD supervisory staff videotape the bookings of civilians especially those that claimed to have been injured by police and those who claimed to have been injured by excessive force.

k) Systemic failure to ensure that HPD officers disclosed to prosecutors information that is favorable to criminal defendants.

85. These systemic lapses and atmosphere fostered by the supervisory defendants' a complete abdication of their responsibilities over HPD officers amounted to a municipal custom, policy or practice of deliberate indifference to the constitutional rights of Holyoke citizens or persons that came in contact with police.

86. Indeed, the City of Holyoke and its police department failed to conduct any investigation of the Plaintiff's complaint of excessive force even after Mr. Smith's counsel filed with a letter of notice of presentment under the Massachusetts Torts Claims Act in June 2015 advising the Town Clerk of the following "Despite the fact that Mr. Smith was not struggling or resisting, the officers continued to kick and punch him repeatedly. He had been subdued and no longer posed a any danger to himself, the public, or the present members of the police department. Both Officers Delvalle and Manzi also subjected Mr. Smith to use of their Tasers guns four separate times…"

87. The Notice and Presentment letter also alerted the City of Holyoke "These violent actions were objectively excessive, contrary to the policies and procedures of the Massachusetts, Holyoke and Westfield Police Departments, and in violation of the Massachusetts Declaration of Rights, as well as Mr. Smith's rights protected by the Fourth, Fifth, Eight and Fourteenth Amendments of the United States Constitution and contrary to the protections of 42 U.S.C. § 1983."

88.   By way of example and not limitation Erick De Jesus sued the City of Holyoke and two of its police officers in connection with a July 6, 2010 motor vehicle pursuit in which De Jesus alleged that at the conclusion of the police chase he gave up, had no weapons and yet two Holyoke officers forcibly dragged him out of the vehicle at gunpoint and beat him with blunt objects while handcuffed behind his back. *Erick De Jesus v. City of Holyoke, et al,* United States Federal District Court- Massachusetts, Case No. 3:13-cv-30128-MAP (Document no. 1, filed 7/3/2013).

89.   On March 27, 2017 the City Holyoke and three of its police officers were sued in the United States Federal District Court of Massachusetts by the mother of a 12-year old minor who alleged her son was severely beaten by police officers on February 8, 2014 with a baton even after he surrendered to police and sustained serious and debilitating injuries including a concussion, a deviated nasal septum and abrasions and contusions to the scalp, face, chin and ear. *Janette Hernandez Pagan v. City of Holyoke, et. al.,* United States Federal District Court- Massachusetts, Case No. 3:17-cv-30031-MGMP (Document no. 1, filed 3/27/2017).

90.   Similarly to Mr. Smith, Hernandez-Pagan argued in her federal case she also alerted the City of her son's injuries in writing on March 23, 2015 but that the City of Holyoke was deliberately indifferent by ignoring the complaint and refusing to investigate it.

91.   By their actions the Defendants' caused Mr. Smith to suffer serious physical injuries, trauma, great pain of body and mind.

92.   Mr. Smith was charged with municipal motor vehicle ordinance bylaw violation, going the wrong way down a one way street, Negligent operation of a motor vehicle, failure to stop for police, leaving the scene of property damage, and two counts of assault with a dangerous weapon (his car) and resisting arrest.  Mr. Smith was dismissed on all charges on December 3rd, 2014 and plead guilty only to reckless operation of a motor vehicle on June 23rd, 2015.

**COUNT I**
**42 U.S.C. § 1983: Unreasonable Force**
**Officers Parnell, Manzi, Del Valle, Trooper Miranda**

93.   Each of the foregoing paragraphs is incorporated as if fully set forth herein.

94.   Defendants' while acting under color of law, used unreasonable force against Mr. Smith and thereby violated the clearly established rights of each of them under the Fourth and Fourteenth Amendments to the United States Constitution to be free from the use of unreasonable force by police officers.

95.   Defendants' acted with reckless disregards for Plaintiffs' constitutional rights.

96.    Defendants' also failed to intervene and protect Plaintiff for the excessive use of force of others.

97.    As a direct and proximate result of the foregoing, the Plaintiffs suffered the injuries described above.

## COUNT II
## 42 U.S.C. § 1983: Monell Claim
## City of Holyoke

98.    Plaintiff re-alleges and incorporates paragraphs 1 through 117 as if set forth fully herein.

99.    The policies and customs of the City of Holyoke as described above were the moving force that motivated the violations of Plaintiff's constitutional rights by Defendants.

100.   The policies and customs of the City of Holyoke along with their failure to properly supervise and to discipline was the motivating force behind the violations of the Plaintiff's constitutional rights.

101.   As a direct and proximate result of the aforementioned, the Plaintiff suffered severe, lasting, and extensive injuries as set forth above.

## COUNT III
## Assault and Battery and Assault and Battery with dangerous weapon
## Officers Parnell, Manzi, Del Valle, Trooper Miranda

102.   Plaintiff re-alleges and incorporates paragraphs 1 through 120 as if set forth fully herein.

103.   Defendants' committed the tort of assault and battery against the plaintiff by assaulting and battering him with no legal justification, excuse, privilege, intentionally, with intent to harm the Plaintiff.

104.   As a direct and proximate result of the Defendant's actions, the Plaintiff suffered extensive injury as described above.

## COUNT IV
## Massachusetts Civil Rights Act, M.G.L. c. 112 § 111M
## Officers Parnell, Manzi, Delvalle, Trooper Miranda

105.    Plaintiff re-alleges and incorporates paragraphs 1-118 as if fully set forth herein.

106.    By means of threats, intimidation, coercion, and false testimony; Defendants' violated the civil rights of the Plaintiff under the laws of the Commonwealth of Massachusetts.

107.    As a direct and proximate result of said violation, the Plaintiff suffered the injuries as described herein.

## COUNT V
## Intentional Infliction of Emotional Distress
## Officers Parnell, Manzi, Delvalle, Trooper Miranda

108.    Plaintiff re-alleges and incorporates paragraphs 1-126 as if fully set forth herein.

109.    By their actions, Defendants' subjected Plaintiff to reprehensible conduct that falls beneath any standard conduct of human decency and Defendants' did so knowingly, intentionally, willfully, purposefully, maliciously and with an intention to inflict harm and injury upon the Plaintiff.

110.    Defendants' conduct constituted intentional infliction of emotional distress. As a direct and proximate result of the intentional conduct of Defendants', Plaintiff suffered severe emotional distress and suffers great pain both of body and mind.

## COUNT VI
## Malicious Prosecution for resisting arrest & two counts of assault with a dangerous weapon
## Officer Parnell

111.    Each of the foregoing paragraphs is incorporated as if fully set forth herein.

112.    Defendant Parnell caused criminal charges to be brought against the Plaintiff including two counts of assault and battery with a dangerous weapon (his car), and resisting arrest for which there was no probable cause.

113.    Defendant Parnell maliciously and for no lawful purpose assisted, participated in and otherwise caused Plaintiff to be criminally prosecuted for this charge.

114.    The resolution of Mr. Smith's criminal charges in connection with the resisting arrest and assault with a dangerous weapon charges was favorable to him.

115.   As a direct and proximate result thereof, Mr. Smith was held at the Hampden County House of Corrections and suffered concerned and worry due to a reasonable perception that his liberty and well-being were at imminent risk as a result of his criminal prosecution.

## COUNT VII
### Civil Conspiracy in Violation of Section 1983
### Officer Parnell, Manzi, Del Valle & Trooper Miranda

116.   Each of the foregoing paragraphs is incorporated as if fully set forth herein.

117.   These Defendants' conspired to hide their misconduct when they agreed to deprive Mr. Smith of his constitutional rights by failing to interfere and protect him from excessive force, or by filing false reports, by employing excessive force yet claiming that the force they used was reasonable under the circumstances.

118.   As a direct and proximate result thereof, the plaintiff suffered the injuries as described herein.

## DEMANDS FOR RELIEF

The Plaintiff hereby respectfully requests the following relief:

1.   All compensatory damages recoverable,
2.   Injunctive relief;
3.   All punitive damages recoverable;
4.   All attorney's fees, costs and expenses allowable; and
5.   Any and all other relief this Court deems just and proper.

## JURY DEMAND

The Plaintiff demands a jury trial as to all issues so triable.

Respectfully submitted,

JOHN J. SMITH, Jr.
BY HIS ATTORNEYS,

*/s/ Hector E. Pineiro*
Hector E. Pineiro, BBO # 555315
Law Office of Hector E. Pineiro, P.C.
807 Main Street
Worcester, MA 01610
Tel. (508) 770-0600
hector@pineirolegal.com

13

/s/ *Jeanne A. Liddy*
Jeanne A. Liddy BBO # 646478
1380 Main Street, Suite 404
Springfield, MA 01103
Tel. (413) 781-7096
Liddylaw2005@yahoo.com

/s/ *Robert A. Ferris*
Robert A. Ferris BBO # 695995
15 Benton Dr.
East Longmeadow, MA 01028
Tel. (413) 695-4051
Robanthonylaw@gmail.com

DATED: June 22, 2017