UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **JOHN J. SMITH, JR.,** | : | |
| Plaintiff, | : | **C.A. No.:  3:17-CV-30078** |
| | : | |
| v. | : | |
| | : | |
| **THE CITY OF HOLYOKE, OFFICERS** | : | |
| **JAMES PARNELL, CRYSTAL MANZI,** | : | |
| **SAMUEL DELVALLE AND MSP TROOPER** | : | |
| **THIAGO O. MIRANDA**, | : | |
| | : | |
| Defendants | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS CITY OF HOLYOKE, OFFICERS JAMES PARNELL, CRYSTAL
MANZI AND SAMUEL DELVALLE**

NATURE AND STATUS OF PROCEEDINGS

The Defendants City of Holyoke, Officer James Parnell, Officer Crystal Manzi and Officer

Samuel Delvalle, pursuant to the provisions of Federal Rule of Civil Procedure 56, move that

this Court enter summary judgment in their favor and dismiss the following federal counts of the

Plaintiff's COMPLAINT AND DEMAND FOR JURY TRIAL (dated and filed 06/22/2017):

COUNT I- 42 U.S.C. §1983- Unreasonable Force vs. Officers Parnell, Manzi,

Delvalle;

COUNT II- 42 U.S.C. §1983- *Monell* Claim vs. City of Holyoke;

COUNT VII- Civil Conspiracy in Violation of Section 1983 vs. Officer Parnell, Manzi,

Delvalle;

1

And pendent state counts: [1]

COUNT III-Assault and Battery and Assault and Battery with a dangerous

weapon vs. Officers Parnell, Manzi, Delvalle;

 COUNT IV- Massachusetts Civil Rights Act, M.G.L. c.112, sec.11H vs.   Officers

Parnell, Manzi, Delvalle;

COUNT V- Intentional Infliction of Emotional Distress vs. Officers Parnell, Manzi,

Delvalle;

COUNT VI- Malicious Prosecution for resisting arrest & two counts of assault with a

dangerous weapon vs. Officer Parnell.

<u>STATEMENT OF FACTS</u>

 For the purposes of this motion for summary judgment only, the Defendants City of

Holyoke, Officer James Parnell, Officer Crystal Manzi and Officer Samuel Delvalle set forth the

following facts:

On June 25, 2014, between 6:00 pm and 6:15 pm, Holyoke Police Officer Crystal Manzi and

her partner Officer J. Lopez were patrolling in their cruiser in the area of 173 Elm Street,

Holyoke, Massachusetts, an area notorious for illegal drug and gang activity. They noticed

Plaintiff Smith come out from the building at 173 Elm Street. The officers did not know Mr.

Smith who, upon noticing the police, suspiciously moved quickly toward a Volvo parked nearby

on Elm Street. Officer Lopez approached Mr. Smith and said a few words, but Mr. Smith

ignored him and proceeded to get into the car. Mr. Smith then backed the car ("floored it", as he

---

[1] Counts III through VI are pendent state claims that the Defendants move be dismissed if the Court allows the present motion for summary judgment on the federal counts only. See *Robertson v. Betz*, Civil Action Number 09-10449-RGS, United States District Court for the District of Massachusetts, 2009 U.S. Dist. Lexis 62054 (July 16, 2009, Decided); *Camelio v. Am. Fed*., 13 F. 3d 666, 671 (1st Cir. 1998).

said) going in the wrong direction on one-way Elm Street. He then drove through the city, at one point going through a stop sign.

Officer James Parnell, patrolling the city in his cruiser at nearby Appleton Street, received a radio report from dispatch about a vehicle going the wrong way on Elm Street. Dispatch reported that Officer Manzi requested backup as the vehicle was not stopping for her. Officer Parnell responded to the scene quickly enough to observe Mr. Smith's Volvo backing down the wrong way on Elm Street with Officer Manzi's cruiser following. Officer Parnell turned from Appleton Street onto Elm Street and followed as Mr. Smith and Officer Manzi backed their vehicles down Elm Street in a northerly direction. At the intersection of Elm and Suffolk Streets, Mr. Smith turned onto Suffolk and headed west. Mr. Smith proceeded through a red traffic light at the intersection of Suffolk Street and Beech Street. Officers Manzi and Parnell followed. Both had their cruiser lights on.

Upon Mr. Smith stopping for a red light at the intersection of Pleasant and Hampden Streets, Officer Manzi pulled her cruiser behind the Volvo as Officer Parnell drove past her to the side of Mr. Smith's car. Officer Parnell got out, walked around front of his car and commanded Mr. Smith to shut off his vehicle. Mr. Smith then attempted to run over Officer Parnell as he drove forward through the intersection. Officer Parnell testified at deposition:

> At that point I could see his hands
> were on the steering wheel clearly. I started
> to approach Mr. Smith's car at which point  he
> turned -- he accelerated towards me and I had to
> jump out of the way.
> (Parnell dep p 16)

Fortunately, Officer Parnell was able to jump out of harm's way. Mr. Smith continued through the intersection up Hampden Street toward interstate I-91. Officer Parnell returned to his cruiser and called dispatch to report that Mr. Smith had tried to hit him with is car. There was a

3

contemporaneous report over the Massachusetts State Police radio at 6:15 pm that Holyoke police trying to stop a vehicle that "had attempted to run over one of its officers after being stopped."

Mr. Smith testified in deposition that he "sped" his car through the streets of Holyoke as he was "trying to shake them" (the police). He had no doubt that the police were trying to stop him, but he was determined not to be voluntarily stopped. Mr. Smith proceeded up Hampden Street toward interstate I-91 with Officer Parnell following directly behind. Mr. Smith entered interstate I-91 northbound. Officer Parnell, in the lead of other Holyoke Police cruisers and a Massachusetts State Police cruiser, followed Mr. Smith from Holyoke to Northampton, Massachusetts where Mr. Smith exited the interstate to head back toward Holyoke on Route 5 southbound. During his drive on I-91, Officer Parnell observed Mr. Smith drive onto the road shoulder and almost collide with other (civilian) vehicles. Mr. Smith admitted to reaching 90 mph on the interstate. Mr. Smith said, referring to his car and the police cruisers, "she outraced them all" as he observed the police cruisers behind him, a mile or so back, with their lights on.

Upon re-entering Holyoke and turning onto Easthampton Road, Mr. Smith made a U-turn, and he appeared to intentionally swerve at, and almost strike, Holyoke Police Officer Padilla's car. Officer Manzi heard Holyoke Police Department dispatch report over the radio that Mr. Smith had tried to "take out" one of the cruisers.

After the U-turn, Mr. Smith drove from Easthampton Road back to Northampton Street, Route 5. Officer Parnell and the other police cruisers followed. During the pursuit from Holyoke to Northampton and back to Holyoke, Officer Manzi followed in the fourth or fifth car behind. Mr. Smith eventually drove to Route 202, westbound toward Westfield, Massachusetts where, on

Route 202, Westfield police deployed stop-sticks. The stop-sticks deflated three of the tires of Mr. Smith's car. It ultimately came to a stop on Route 10 in Westfield.

As Mr. Smith's car was slowing, it collided with two cruisers driven by Holyoke Police Officers Welch and Bartolomy. It appeared to Officer Parnell that Mr. Smith intentionally struck the police cruisers. Mr. Smith specifically denied he was injured as a result of the collision with the police cruisers at the end of the pursuit.

Almost immediately after stopping, Mr. Smith remembered a K-9 coming through the passenger side front window. Upon seeing the dog, Mr. Smith remembers nothing until being in an ambulance.

There were multiple police agencies involved in the pursuit and stop of Mr. Smith. Unidentified police officers ordered Mr. Smith to show his hands and to put his hands behind his back. He did not comply. It took four or five police officers to remove the struggling Mr. Smith from his car. Multiple officers from multiple agencies tried to control Mr. Smith. Officer Parnell helped pull Mr. Smith from his car. Officer Parnell never struck or otherwise used force upon Mr. Smith.

Officer Manzi came upon the scene as police officers were pulling Mr. Smith from his car and attempting to handcuff him. She and other police officers believed that Mr. Smith posed a threat to police officer safety. Massachusetts State Police Trooper Miranda, in deposition, testified as follows:

> 29 Q. Fair enough. Did you have a
> concern for your safety, Trooper, as you
> approached Smith' svehicle?
> A. Yes, sir.
> Q. And what was the concern you had?
> A. Based on his recent actions of
> 30. attempting to run over a Holyoke police officer
> and based on the fact that he was evading

> *apprehension by fleeing in his vehicle, I saw*
> *that he was a motivated individual not to be*
> *captured, so that to me -- I read that as a*
> *risk.*
> *Q. I guess I will go back to my prior*
> *line of questioning. If you felt he was a risk*
> *based on the information you had received and*
> *your own observations, would it not have been*
> *safer to try and order him out of the car as*
> *opposed to converging on him?*
> *MR. KITTREDGE: Objection.*
> *MR. EMMA: Objection.*
> *A. Sir, based on the circumstances*
> *that we had with us, we acted in the best*
> *possible way for us to be safe and for him to be*
> *safe. So I can't exactly answer that question*
> *because I don't know how it pertains to*
> *different scenarios.*
> *(Miranda dep p 29-30)*

While he was on the ground, Mr. Smith resisted arrest by kicking and wildly swinging his elbows, arms and fists and by positioning his upper body to prevent the officers from gaining control. Officer Manzi assisted other police officers to subdue the struggling and noncompliant Mr. Smith by using her taser upon him in drive-stun mode. Her first application of the drive-stun was ineffective as Mr. Smith continued to struggle with the police, causing the taser to lose contact with Mr. Smith. It took an additional three drive-stun attempts (a total of four) for Mr. Smith to release his hands so the officers could apply handcuffs. Eventually, Holyoke Police Officer Padilla was able to handcuff Mr. Smith.

Officer Delvalle had earlier joined the pursuit of Mr. Smith back at the intersection of Hampden and Pleasant Streets in Holyoke. He continued in the pursuit, following four to five cars behind, all the way to where Mr. Smith's car came to a stop in

Westfield. He described in deposition testimony a noncompliant and resisting Mr.

Smith at scene of the stop:

> *I saw that he was not giving his*
> *arms out or allowing officers to handcuff him*
> *despite officers demanding that he put his hands*
> *behind his back and I remember Officer Manzi*
> *being there.*
> *Q. Could you actually hear commands or*
> *directives from officers towards Smith?*
> *A. I heard commands and words.*
> *Q. What do you recall hearing?*
> *A. "Put your hands behind yourback,*
> *give me your arm." That's what I recall.*
> *Q. And it's your testimony you don't*
> *recall seeing him comply with those commands?*
> *A. That is correct.*

*(Delvalle dep p 22)*

As officers tried to pull Mr. Smith's hands out from underneath him, Officer Delvalle

observed Officer Manzi twice drive stun Mr. Smith with her taser. The drive stun was

ineffective both times, and Mr. Smith continued to struggle with the police. Officer

Delvalle, therefore, removed his taser and drive stunned Mr. Smith two more times

resulting in his submission.

Officers Parnell, Manzi and Delvalle completed and submitted detailed narrative

reports of the incident pursuant to Holyoke Police Department policies and procedures.

Officers Manzi and Delvalle completed and submitted Use of Force reports for their

taser use. Supervisory officers found that their use of force was appropriate under the

circumstances (HPD arrest report including officers' narrative reports and Use of Force

reports)

On October 21, 2014, a Hampden County Grand Jury indicted John J. Smith, Jr. for

the following:

- Indictment No. 14 11001-- Driving to Endanger, MGL Ch. 90, sec. 34;

- Indictment No. 14 11002—Refusal to Submit to Police Officer, MGL Ch. 90, sec. 25;

- Indictment No. 14 11003—Leaving Scene of Property Damage, MGL Ch 90, sec. 24;

- Indictment No. 14 11004—Assault by Means of a Dangerous Weapon, MGL Ch. 265, sec. 15B(b) [ "upon James Parnell by means of a dangerous weapon, namely a motor vehicle….";

- Indictment No. 14 11005—Assault by Means of a Dangerous Weapon, MGL Ch. 265, sec. 15B(b) [ "upon William Padilla by means of a dangerous weapon, namely a motor vehicle….".

*(Indictments 14 11001 through 14 11005, inclusive)*

John J. Smith, Jr. pleaded guilty to Reckless Operation of a Motor Vehicle (MGL c. 90 sec. 24(2)(a)) for which he was sentenced to 24 months in the Hampden County House of Corrections. All other charges, counts 2-5, were Nolle Prosequi.[2]

As of June 25, 2014, the Holyoke Police Department had promulgated Standard Operating Procedures (SOP) regarding policy guidelines for the use of force and use of force reporting. *(Ex 11a: HPD SOP 8.2.0 and 8.2.1.)* that in pertinent part provide:

*Because of their law enforcement and peacekeeping role, police officers*

*will be required at times to resort to the use of physical force to enable*

*them to fully carry out their responsibilities. Police officers are confronted*

---

[2]  See Exhibit 10 certified copies of: Hampden County Superior Court no. 1279CR01100 Public Docket Report, notice of Nolle Prosequi Counts 2-5, Clerk's Log, Indictments 14 1100-1 to 14 1100-5, inclusive, MITTIMUS FOR SENTENCE.

> *continually with situations requiring or resulting in the use of various*
>
> *degrees of force to affect a lawful arrest, to ensure public safety, or to*
>
> *protect themselves or others from harm. The degree of force used is*
>
> *dependent upon the facts surrounding the situation the officers face. Only*
>
> *a reasonable and necessary amount of force may be used. The degree of*
>
> *force the officer uses often depends upon the amount of resistance or*
>
> *threat to safety that the situation produces.*
>
> *(HPD SOP 8.2.0 and 8.2.1.p 1 of 23)*

The SOP provides policy guidelines for taser use and use of force reporting (*HPD SOP 8.2.0 and 8.2.1.p 5 of 23*) and injury to prisoner reporting *(HPD SOP 8.2.0 and 8.2.1.p 15 of 23)*

Additionally, as of June 25, 2014, the Holyoke Police Department had promulgated Standard Operating Procedures (SOP) regarding policy guidelines for vehicular pursuits and high-speed vehicular pursuits (SOP 6.5.0 and 6.5.1.). Both permit vehicular pursuits allowing for police officer discretion to discontinue the pursuit based on a number of factors, among them officer, public and perpetrator safety. Lead pursuit Officer Parnell was knowledgeable of these HPD pursuit policies, and he had prior pursuit experience. Consistent with HPD pursuit policies, Officer Parnell testified as to some reasons to discontinue pursuit of a motor vehicle:

> *A. Different factors, safety, nature*
> *of the reason for the   stop.*
> *Q. And when you say safety,  whose*
> *safety did you  mean?*
> *A. The general public.*
> *Q. Officers as well?*
> *A. Yes, sir, in some cases.*
> *Q. How about even the safety of  the*
> *person being pursued? Is that   considered?*
> *A. I always consider it, yes.*
> *Q. And you said the nature of  the*
> *offense as  well?*

*A. Yes, sir.*
*Q. When you say the nature of the*
*offense, is there a distinction in terms of the*
*seriousness of the offense?*
*A. Yes, sir.*
*Q. In terms of Smith that day, what*
*was your understanding during the pursuit?   What*
*was the nature of his offense?*
*A. At that time, attempted assault and*
*battery on a police officer with a deadly*
*weapon.*
*Q. That being you?*
*A. That being me.*
*Q. Do you know, Officer, was Smith*
*ever charged with that offense?*
*A. Yes, I believe that was one of the*
*charges.*
*Q. Do you know what the disposition or*
*result of that charge was?*
*A. I don't.*
    (*Ex. 4: Parnell dep p 28-30*)

<u>ARGUMENT</u>

A. <u>Officers Parnell, Manzi And Delvalle Are Entitled To Qualified Immunity.</u>

Officers Parnell, Manzi and Delvalle, sued in their individual capacities, are entitled to

qualified immunity because their conduct, when viewed under the totality of circumstances, was

reasonable and did not violate any clear, apparent and particular constitutional right of the

Plaintiff. *See Martinez v. Colon*, 54 F. 3d 980 (1st Cir. 1995).  Courts resolve many excessive

force cases involving officers' judgment calls on qualified immunity grounds, either at summary

judgment or at trial. *Isom v. Town of Warren*, 360 F. 3d 7, 9 (1st Cir. 2004); *see Ryder v. United*

*States*, 515 U.S. 177, 185 (1995).

"Under our precedents, officers are entitled to qualified immunity under §1983 unless (1)

they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct

was 'clearly established at the time.' *Reichle* v. *Howards*, 566 U. S. 658, 664 (2012). 'Clearly

10

established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful.  [*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)] (quoting *Anderson* v. *Creighton*, 483 U. S. 635, 640 (1987)). In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.' *al-Kidd*, *supra* at 741. This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.' *Malley* v. *Briggs*, 475 U. S. 335, 341 (1986)." *District of Columbia v. Wesby*, 583 U.S.____, 138 S.Ct. 577, 589 (2018).

"Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. [*Mullenix v. Luna*, 577 U.S. ___, 136 S.Ct. 305, 309 (2018) (per curiam)] (internal quotation marks omitted and emphasis deleted)." *Kisela v. Hughes*, 584 U. S. ___, 138 S.Ct. 1148, 1152-3 (2018) (p*er curiam*). In *Kisela*, the Supreme Court engaged in the following fact-enriched analysis[3]:

> *Kislea says he shot Hughes because, although the officers themselves were in no apparent danger, he believed she was a threat to Chadwick. Kisela had mere seconds to assess the potential danger to Chadwick.  He was confronted with a woman who had just been seen hacking a tree with a large kitchen knife and whose behavior was erratic enough to cause a concerned bystander to call 911 and then flag down Kisela and Garcia. Kisela was separated from Hughes and Chadwick by a chain-link fence; Hughes had moved to within a few feet of Chadwick; and she failed to acknowledge at least two commands to drop the knife.  Those commands were loud enough that Chadwick, who was standing next to Hughes, heard them. This is far from an obvious case in which any competent officer would have known that shooting Hughes to protect Chadwick would violate the Fourth Amendment."*

584 U.S. at ___, 138 S.Ct at 1153.

---

[3] Like *Kisela*, the present case presents itself on the Defendants' Motion for Summary Judgment. In *Kisela*, the District Court granted the defendant police officer's motion for summary judgment, and the Ninth Circuit reversed. After granting certiorari to the officer's petition, the Supreme Court reversed and remanded. *Kisela v. Hughes*, 584 U. S. ___, 138 S.Ct. 1148, 1154-5 (2018) (p*er curiam*). "This case arrives at our doorstep on summary judgment, so we must 'view the evidence . . . in the light most favorable to' Hughes, the nonmovant, 'with respect to the central facts of this case.' *Tolan v. Cotton,* 572 U. S. ___, ___, 134 S.Ct. 1861 (2014) (*per curiam*).  *Kisela, 584 U. S.* at ____, 138 S.Ct at 1155.

Mindful that *all but the plainly incompetent or those who knowingly violate the law* are entitled to qualified immunity*, our analysis here requires an examination of the factual circumstances that confronted the Holyoke Police Officers at the end of the pursuit where Mr. Smith allegedly suffered injury.[4] Salient among those circumstances is the officers' knowledge of Mr. Smith's conduct during the pursuit: admittedly keen on avoiding arrest; twice attempting to assault Holyoke Police Officers; and almost striking civilian vehicles on I-91. Like the police officers in *Kisela*, Officers Parnell, Manzi and Delvalle believed they were dealing with a person who was a threat to them and to the public.

There is no dispute that *Officer Parnell at no time used force upon the person of John J. Smith, Jr.* Therefore, summary judgment for Officer Parnell is appropriate.

As to Officers Manzi and Delvalle, the analysis involves a review of their taser use upon Mr. Smith. Officers Manzi and Delvalle were aware of the high-risk situation they and other police officers were facing when Mr. Smith's car came to a stop. Massachusetts State Police Trooper Miranda best characterized the danger during his deposition:

> 29 Q. Fair enough. Did you have a
> concern for your safety, Trooper, as you
> approached Smith' svehicle?
> A. Yes,sir.
> Q. And what was the concern you had?
> A. Based on his recent actions of
> 30. attempting to run over a Holyoke police officer
> and based on the fact that he was evading
> apprehension by fleeing in his vehicle, I saw
> that he was a motivated individual not to be
> captured, so that to me -- I read that as a
> risk.
> Q. I guess I will go back to my prior

---

[4] The Plaintiff challenges the propriety of the pursuit and the way the police removed Mr. Smith from his car, suggesting that the police should have stopped the pursuit or should have talked Mr. Smith out of the car. The argument, discussed elsewhere in this memorandum, is without merit as the Plaintiff asserts that the pursuit, stop and removal did not cause the Plaintiff's injuries. See Plaintiff's Complaint and Demand for Jury Trial, Introductory paragraph 1 wherein he alleges police excessive force upon his body caused his injuries.

> *line of questioning. If you felt he was a risk*
> *based on the information you had received and*
> *your own observations, would it not have been*
> *safer to try and order him out of the car as*
> *opposed to converging on him?*
> *MR. KITTREDGE: Objection.*
> *MR. EMMA: Objection.*
> *A. Sir, based on the circumstances*
> *that we had with us, we acted in the best*
> *possible way for us to be safe and for him to be*
> *safe. So I can't exactly answer that question*
> *because I don't know how it pertains to*
> *different scenarios.*
> *(Miranda dep p 29-30)*

Officer Parnell testified similarly at his deposition:

> *In terms of Smith that day, what*
> *was your understanding during the pursuit? What*
> *was the nature of his offense?*
> *A. At that time, attempted assault and*
> *battery on a police officer with a deadly*
> *weapon.*
> *Q. That being you?*
> *A. That being me.*

Officer Manzi witnessed Mr. Smith's attempt to strike Officer Parnell with the Volvo. She participated in the pursuit, which involved speeds up to 90 mph. She witnessed Mr. Smith's attempt to strike Officer Padilla's cruiser. She and the other police officers thus possessed a legitimate concern for their safety when she assisted the arresting officers by using her taser on the struggling and kicking Mr. Smith. Clearly, and objectively, the police were dealing with an individual who was motivated not to be captured. (Smith dep p 165) The police officer in *Kisela*, had the same safety concerns when he confronted, and later shot, the Plaintiff in that case.

13

Officer Delvalle joined the pursuit at an early point in Holyoke. Aware of the radio reports of the attempts to strike two Holyoke Police Officers with the Volvo, Officer Delvalle also knew the high danger situation he was about to encounter at the stop. He observed:

> A. I heard commands and words.
> Q. What do you recall hearing?
> A. "Put your hands behind yourback,
> give me your arm." That's what I recall.
> Q. And it's your testimony youdon't
> recall seeing him comply with those   commands?
> A. That is correct.

Officer Delvalle responded by using his taser twice on Mr. Smith, thereby gaining compliance from him so that Officer Padilla could apply handcuffs.

As in *Kisela*, the Defendants' objective belief as to the potential danger presented by the circumstances is paramount. Of note, the Supreme Court emphasized the loudness of Officer Kisela's demands to the suspect to "drop the knife". Our officers also shouted commands to Mr. Smith to "put his hands behind your back" and "give me your arm"! In the totality of the circumstances, the Defendants' use of force is "far from an obvious case in which any competent officer would have known" that the act of repeatedly tasing the struggling, fighting and kicking John J. Smith, Jr. violated his Constitutional rights.

This is not case where the unlawfulness of the arrest and the misapplication of force were "beyond debate". *Wesby*, 583 U.S.____ (2018) (slip op., at 15), citing *Ashcroft* v. *al-Kidd*, 563 U. S. 731, 735 (2011). Much to the contrary, the conduct of Officers Parnell, Manzi and Delvalle has been subject to vigorous debate. Withholding qualify immunity in this case from Officers Parnell. Manzi and Delvalle would hamstring the Holyoke Police Department from their mission to "Preserve and Protect" the public.

B. <u>As A Matter Of Law, The Plaintiff Has Failed To Proffer Any Evidence That Officers Parnell, Manzi Or Delvalle Used Excessive Force During The Stop And Arrest Of June 25, 2014.</u>

The police may use such force as is reasonably necessary to effect an arrest. "'[T]he use of force is an expected, necessary part of a law enforcement officer's task of subduing and securing individuals suspected of committing crimes.'" *United States v. Dancy*, 640 F. 3d 455, 477 (1st Cir. 2011) quoting *Lee v. Ferraro*, 284 F. 3d 1188, 1200 (11th Cir. 2002). "[F]ourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) quoting from *Terry v. Ohio*, 392 U.S.1, 22 -27 (1968). "'[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Tennessee v. Garner*, 471 U.S., at 8 -9 (the question is 'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure')." *Graham*, 490 U.S. at 396.

"In an excessive force case, the threshold constitutional question is analyzed under the Fourth Amendment's objective reasonableness standard. *See Saucier,* 533 U.S. at 204-05, 121 S.Ct. 2151 (citing *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Under this standard, if an officer 'reasonably, but mistakenly, believed that a suspect was likely to fight back ... the officer would be justified in using more force than in fact was needed.' *Id.* at 205." *Whitfield v. Melendez-Rivera*, 431 F. 3d 1, 7 (1st Cir.  2005).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *See Terry v. Ohio*, supra, at 20-22. The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, *Hill v. California*, 401 U.S. 797 (1971), nor by the mistaken execution of a valid search warrant on the wrong premises, *Maryland v. Garrison*, 480 U.S. 79 (1987). With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' *Johnson v. Glick*, 481 F.2d, at 1033, violates the Fourth Amendment. The calculus of reasonableness must embody [490 U.S. 386, 397]   allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-397. Techniques legitimately used by police officers may cause serious injury to the person resisting. *Jennings v. Jones*, 587 F. 3d 430, 441 (1st Cir. 2009).

Without deciding that the plaintiff's constitutional rights were violated when the police shot her, the Supreme Court in *Kisela* suggested that, when presented with a fact pattern similar to one at bar (see discussion above), it was "not evident" that the police had violated the plaintiff's rights. "Here, the Court need not, and does not, decide whether Kisela violated the Fourth Amendment when he used deadly force against Hughes.  For even assuming a Fourth Amendment violation occurred—a proposition that is not at all evident—on these facts Kisela was at least entitled to qualified immunity." *Kisela v. Hughes*, 584 U. S. at ___, 138 S.Ct. at 1152

In *Isom v. Town of Warren*, 360 F. 3d 7 (1st Cir. 2004), the First Circuit applied the *Graham* legal test upon *de novo* review of the evidence where the trial court had granted the defendant's motion for judgment as a matter of law under F.R.C.P. Rule 50 (a)). It opined that the factfinder must consider: "the reasonableness of the officer's application of force under the circumstances of a stop or arrest from the perspective of the reasonable officer at the scene, rather by hindsight." *Isom,* 360 F. 3d at 11. Moreover, the factfinder "should take into account 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest by flight.' *Id.* at 396; *Bastien v. Goddard*, 279 F. 3d 10, 14 (1ˢᵗ Cir. 2002). All of the attendant circumstances must be considered. *See Graham*, 490 U.S. at 396." *Isom*, 360 F. 3d at 11.

In this case, Officer Parnell exercised no force upon Mr. Smith as he assisted other officers in removing Mr. Smith from his car. There is no evidence that Officer Parnell struck or otherwise employed force upon Mr. Smith's body. As to Officers Manzi and Delvalle, the crime at issue that led up to the stop and arrest of Mr. Smith was severe. Both officers knew that Mr. Smith had tried to strike Holyoke police officers with his car two separate times. Both officers witnessed Mr. Smith's determination to avoid capture and arrest during the pursuit. Both officers witnessed Mr. Smith vigorously fighting with police officers at the scene of his arrest. The arresting officers Parnell, Manzi and Delvalle were faced with having to make judgment calls in how much force was needed to subdue Mr. Smith.  In determining each officer's reasonableness, the Court must allow that, under all the circumstances presented the evening of June 25, 2014, Officers Parnell, Manzi and Delvalle needed to make split second judgments in tense, uncertain, and rapidly evolving events. *See, Kisela,* 584 U. S. ___ (2018) (p*er curiam*) (slip op., at 4) citing *Graham v. Connor*, 490 U. S. 386, 396-397 (1989). "Even if mistaken, an officer who makes 'a

reasonable judgment call' is entitled to qualified immunity." *Buchanan v. Maine*, 469 F.3d 158, 170 (1st Cir. 2006).

Given the totality of circumstances, the Plaintiff cannot show that Officer Parnell's action in stopping and removing Mr. Smith from his car and Officers Manzi's and Delvalle's use of their tasers were objectively unreasonable or constituted excessive force. Therefore, the Court should grant summary judgment to the Defendants on Count I brought pursuant to 42 U.S.C.1983.

C. <u>The Plaintiff Cannot Establish A Custom Or Practice Of The City Of Holyoke Of Deliberate Indifference To Any Known Constitutional Right That Caused A Violation Of Said Right.</u> [5]

The Plaintiff's claims against the City of Holyoke are predicated on *Monell v. Department of Social Services of the City of New York, et al.,* 436 U.S. 658 (U.S. 1978). Municipal liability under *Monell* follows only where the municipality, because of a policy or custom of deliberate indifference, causes a denial of constitutional rights. *Id*. at 436. The Plaintiff bears the burden of demonstrating the existence of a policy or custom and a "direct causal link" between that policy or custom and the alleged constitutional violation. *Id*. at 694; *City of Canton v. Harris,* 489 U.S. 378, 385 (1989); *Santiago v. Fenton,* 891 F.2d 373, 381-382 (1st Cir. 1989).

The Plaintiff cannot establish substantive facts that an unconstitutional custom or policy of the City of Holyoke caused a violation of his rights. The Plaintiff in his COMPLAINT AND DEMAND FOR JURY TRIAL, Count II paragraphs 76-87, vaguely

---

[5] If the Court denies its motion for summary judgment, the City of Holyoke moves for the bifurcation of the Plaintiff's *Monell* claims from the claims against the defendant police officers and stayed until disposition of the individual claims. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) where the Court found that the magistrate judge's decision to bifurcate the trial was reasonable in the interests of judicial economy and avoiding possible juror confusion. *See also Myatt v. City of Chicago, et al,* 816 F. Supp. 1259; 1992 U.S. Dist. LEXIS 18417; 25 Fed. R. Serv. 3d (Callaghan) 1511, United States District Court for the Northern District of Illinois, Eastern Division, 1992.

asserts a number of allegations based "upon information and belief" challenging the policies and procedures of the City of Holyoke. Such vague and conclusory allegations, without more, are insufficient to sustain the Plaintiff's burden on this motion.  The Plaintiff cannot identify and proffer any evidence that any policies or customs of the City of Holyoke caused its officers to use excessive force, thereby depriving the Plaintiff of his constitutional right.

The Plaintiff, in his complaint, hints at a challenge to the Holyoke Police Department's reporting procedures as suggestive of a "failure to supervise and discipline". The Holyoke Police Department adopted clearly delineated Standard Operating Procedures as guidelines for the use of force and use of force reporting. Consistent with *Graham* and *Isom*, Holyoke Police Department's policies regarding the use of force provide "reasonable considerations and guidelines" respecting the use of force. The guidelines permit officers to "exercise reasonably necessary force to establish and maintain control over a situation to effect a lawful arrest, effectively bring an incident under control, to ensure public safety or protect themselves from harm".  There is no evidence that this policy or procedure pertaining to the use of the force employed by the Holyoke Police Officers was so unreasonable that it amounted to deliberate indifference. This failure was likewise a flaw in the Plaintiff's proof in *Isom*. "Nor did the plaintiff produce any written policy or text stating that the use of pepper spray in circumstances such as those faced by [officer] Clancy was not reasonable." *Isom,* 360 F. 3d at 12.

There is no evidence that the City of Holyoke failed to train its officers on the use of force, the use of a taser or on the amount of force they could use in this type of encounter with Mr. Smith.  There is no evidence of inadequate procedures for the filing of reports regarding the events of June 25, 2014, the officers' use of force and John Smith's injuries. There is no evidence that the actual Holyoke Police department's documentation in this case; contained in

the officers' detailed reports, narrative statements, supplemental narrative statements, arrest report, dispatch report, booking record and use of force report caused any injury to the Plaintiff during the events of June 25, 2014.

The Plaintiff may try to challenge to the propriety of the pursuit and the way the police removed Mr. Smith from his car by suggesting that officers should have either stopped the pursuit or should have talked him out of the car. The problem with that challenge is that the pursuit, stop and removal did not cause the Plaintiff's injuries, according to the Plaintiff. See Plaintiff's Complaint and Demand for Jury Trial, Introductory paragraph 1 wherein the Plaintiff alleges police excessive force upon his body caused his alleged injuries. At his deposition, Mr. Smith specifically denied he was injured as a result of the collision with the police cruisers at the end of the pursuit.

The Holyoke Police Department had in effect on June 25, 2014, detailed policies and procedures regarding vehicular pursuit and high-speed vehicular pursuit (SOP 6.5.0 and 6.5.1.). Both permit vehicular pursuits allowing for police officer discretion to discontinue the pursuit based on a number of factors, among them officer, public and perpetrator safety. Lead pursuit Officer Parnell was knowledgeable of these HPD pursuit policies, and he had prior pursuit experience. (*Parnell dep p 25-27*) Consistent with HPD pursuit policies, Officer Parnell testified as to reasons to discontinue pursuit of a motor vehicle. (*Parnell dep p 28-30*)

> *A. Different factors, safety, nature*
> *of the reason for the   stop.*
> *Q. And when you say safety,  whose*
> *safety did you  mean?*
> *A. The general public.*
> *Q. Officers as well?*
> *A. Yes, sir, in some cases.*
> *Q. How about even the safety of  the*
> *person being pursued? Is that   considered?*
> *A. I always consider it,  yes.*

> *Q. And you said the nature of the*
> *offense as well?*
> *A. Yes, sir.*
> *Q. When you say the nature of the*
> *offense, is there a distinction in terms of the*
> *seriousness of the offense?*
> *A. Yes, sir.*
> *Q. In terms of Smith that day, what*
> *was your understanding during the pursuit?   What*
> *was the nature of his offense?*
> *A. At that time, attempted assault and*
> *battery on a police officer with a deadly*
> *weapon.*
> *Q. That being you?*
> *A. That being me.*
> *Q. Do you know, Officer, was Smith*
> *ever charged with that offense?*
> *A. Yes, I believe that was one of the*
> *charges.*
> *Q. Do you know what the disposition or*
> *result of that charge was?*
> *A. I don't.*
>      (*Ex. 4: Parnell dep p 28-30)*

Any assertion that the Holyoke Police Department's failure to train its officers in police pursuit, high speed pursuit, stop and arrest as the cause of the Plaintiff's deprivation likewise fail. In *Schand v. City of Springfield*, C.A. No. 15-cv-30148-MAP, MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO STRIKE (Dkt. No. 135, p. 65) (May 6, 2019) Judge Ponsor discussed the proof required of the Plaintiff in a failure to train case.

> "In the case of a failure-to-train claim, the requirements of proof are rather stringent. To ground liability, 'a training program must be quite deficient in order for the deliberate indifference standard to be met: *the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing*.' *Young v. City of Providence*, 404 F.3d 4, 27 (1st Cir. 2005). Moreover, as noted above, the Court of Appeals has recently emphasized that '[i]t is not enough to show that the Town's training regimen was faulty; [the plaintiff] must also show that the Town knew or had reason to believe that such a regimen had unconstitutional effects.' *Gray v. Cummings*,

917 F.3d 1, 14 (1st Cir. 2019). The way to do this, the court said, is to offer 'evidence of past violations sufficient to put the Town on notice of such effects.' *Id*." "The final, and perhaps strongest, argument supporting summary judgment in favor of Springfield is the absence of any evidence of a pattern of police misconduct prior to 1986 that would put the city on notice of some significant risk that, driven by the inadequate training, constitutional violations would occur. As the First Circuit's *Gray* decision emphasizes, on this point expert testimony regarding defects in the training regimen is not enough. Actual or constructive notice through a past history of constitutional violations is required." (emphasis added)

*Schand,* Dkt. No. 135, p. 70.

The Plaintiff, in order to succeed, must prove the existence of other *similar incidents*. *Mui v. Dietz,* 559 F. Supp. 485 (N.D. Ill. 1983) (emphasis added). There must be proof of a persistent and widespread policy of deliberate indifference to claims of this type, as a single event does not impose municipal liability. *Caiani v. Town of Walpole,* 624 F. Supp. 311; 1985 U.S. Dist. LEXIS 12797 (D. Mass. 1985). The Plaintiff has failed to show other claims or other similarly situated complainants. The record is devoid of evidence of a pattern of the use of excessive force or failure of the Holyoke Police Department's vehicular pursuit or high-speed pursuit policies under similar circumstances to suggest a policy or custom of deliberate indifference.

Finally, because Defendants Parnell, Manzi and Delvalle are entitled to qualified immunity (see discussion above), the Plaintiff cannot reach the city under 42 U.S.C.S. §1983. *See McVay v. Sisters of Mercy Health Systems*, 399 F. 3d 904 (8th Cir. 2005) (District court properly entered summary judgment in favor of the city). *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (per curiam) (claim of municipal liability under *Monell* cannot stand without showing that individual officers violated plaintiff's constitutional rights). As the Court in *Heller* explained, "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Id.*

22

D. <u>As Matter Of Law, The Plaintiff's Claim Of Civil Conspiracy In Violation Of Section 1983 Against Officers Parnell, Manzi And Delvalle Asserted In Count VII Should Be Dismissed.</u>

The elements for a claim of conspiracy to violate Plaintiff's civil rights include "an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Estate of Bennett v. Wainwright,* 548 F.3d 155, 178 (1st Cir. 2008). The Plaintiff proffers no facts which could establish any conspiracy between and among the Defendant Holyoke Police Officers or any other police officer to deprive Mr. Smith of his constitutional rights. Additionally, the record is devoid of any evidence demonstrating an "agreement among conspirators" to falsify reports or provide false testimony. *See Thore v. Howe*, 466 F.3d 173, 179 (1st Cir. 2006); *Mitchell* v. *City of Boston*, 130 F. Supp. 2d 201, 213 (D. Mass. 2001).

Moreover, there can be no inference of any agreement to deny the Plaintiff his constitutional rights from the circumstances of this case. See *Earle v. Benoit*, 850 F.2d 836, 843 (1st Cir. 1988). As argued in section B above, the record is silent as to any affirmative conduct of the Holyoke police to encourage the enhancement of the danger, i.e. excessive force, to the Plaintiff. *Rivera v. Rhode Island*,402 F.3d 27, 35 (1st Cir. 2005). Additionally, the record is devoid of any evidence of ratification by the Holyoke Police Department or the Holyoke officers of any alleged police misconduct as they neither ordered, condoned nor encouraged any offending acts. *Hampton v. Holmesburg Prison Officials*, 546 F. 2d 1077 (3rd Cir.1977); *Manfredonia v. Barry*, 401 F. Supp. 762 (ED NY 1975); *Schweiker v. Gordon*, 442 F. Supp. 1134 (ED PA 1977).

E. <u>If the Court Resolves the Federal Claims in Favor of the Defendants, the Court Should Use Its Discretion to Dismiss the Remaining State Law Claims.</u>

The Court should grant summary judgment to the Defendants on all the federal claims, which would leave only state law claims. In that instance, where the Court has disposed of all claims over which it has original jurisdiction, it should decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. §1367 (c) (3); *Carnegie-Melon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Eves v. LePage*, 842 F.3d 133, 146 (1st Cir. 2016); *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995). In some instances, such as where the state court can better address the substantial state law issue, such as the state-law exemptions and state-law administrative non-compliance asserted here by these Defendants, it can be an abuse of discretion to retain jurisdiction over the state law claims. *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017). The Court should decline to hold onto those claims here.

<u>CONCLUSION AND RELIEF REQUESTED</u>

For the forgoing reasons, the Defendants City of Holyoke, Officer James Parnell, Officer Crystal Manzi and Officer Samuel Delvalle request the Court enter summary judgment in their favor on the federal claims and dismiss the remaining state law claims in this action.

If the Court denies this motion for summary judgment on the federal claims, the Defendants request that the *Monell* claims against the City of Holyoke be bifurcated and stayed until disposition of the Plaintiff's claims against the individual Defendants.

Respectfully submitted:

 /s/ Charles J. Emma,
Charles J. Emma BBO # 542126
PO Box 510040
Punta Gorda, Florida, 3951
413-297-6367 CharlesEmmaLaw@gmail.com
Dated: July 8, 2019
Counsel for the Defendants City of Holyoke, Officer James Parnell
 and Officer Samuel Delvalle

Officer Crystal Manzi by:
/s/Austin M. Joyce
Austin M. Joyce, Esquire BBO #255040
508-754-7285
Reardon, Joyce & Akerson, P.C.
4 Lancaster Terrace, Worcester, MA.01609
ajoyce@rja-law.com

## CERTIFICATE OF SERVICE

(for: MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS CITY OF HOLYOKE, OFFICERS JAMES PARNELL, CRYSTAL MANZI
AND SAMUEL DELVALLE)

I, Charles J. Emma, do hereby certify that on July 8, 2019 I served MEMORANDUM IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS CITY OF
HOLYOKE, OFFICERS JAMES PARNELL, CRYSTAL MANZI AND SAMUEL
DELVALLE) by filing through the ECF system and notice will be sent electronically to the
registered participants as identified on the notice of electronic filing (NEF).


  /s/ Charles J. Emma, Counsel for the Defendants
Charles J. Emma BBO # 542126
PO Box 510040
Punta Gorda, Florida, 3951
413-297-6367 CharlesEmmaLaw@gmail.com
Dated: 7-8-2019