# HOLYOKE POLICE DEPARTMENT
# STANDING OPERATING PROCEDURE

| SUBJECT: VEHICULAR PURSUIT | | |
|---|---|---|
| NUMBER:<br>5.0 | EFFECTIVE DATE:<br>JANUARY 2003 | REVISION DATE:<br>NOVEMBER 2014 |

I. **GENERAL CONSIDERATIONS AND GUIDELINES**

Vehicular pursuits are necessary to effectuate the enforcement of criminal and motor vehicle laws. Many of these pursuits are inherently dangerous and therefore create some risk of injury to the pursuing officer(s), the occupant(s) of the pursued vehicle, and the public at large.

The primary purpose of this policy is to secure a balance between the need to protect the lives of the public and the occupants of the pursued vehicle and the obligation of police officers to enforce laws and apprehend violators.

This policy also recognizes that vehicular pursuits do not automatically occur when officers activate their emergency warning equipment in an attempt to effectuate a lawful motor vehicle stop. Motorists occasionally may not immediately see or hear an officer's emergency warning equipment, or may not realize that they are the target of the officers' efforts. Officers may be required to follow a motorist with emergency warning equipment activated for a significant distance before that motorist actually stops the vehicle. Consequently, an officer's lawful attempt to stop a motorist is not considered a vehicular pursuit subject to the requirements and restrictions of this policy unless and until such time as the officer reasonably believes that the motorist is intentionally ignoring the officer or actively attempting to elude the officer.

Since numerous unique situations arise in law enforcement, it is impossible for this policy to anticipate all possible vehicular pursuit circumstances. Therefore, in unusual situations an officer should use common sense and consult with a supervisor whenever possible.

Patrol officers shall make every reasonable effort to apprehend a fleeing violator, but pursuit should not be carried to such an extent as to appreciably endanger the lives of innocent users of our streets and highways, or the officer him/herself.

Low-speed pursuit is motorized pursuit of another vehicle at speeds at or below the legal speed limit. An officer may within the posted speed limit, engage in a low-speed pursuit of a motor vehicle at or below the posted speed limits for traffic law violations or if sufficient reasonable suspicion exists to justify traffic stop as long as they do not endanger the public.

High-speed pursuit is motorized pursuit of another vehicle at speeds above the legal speed limit. Ours is a highly mobile society and this fact, coupled with the natural desire of a law violator to avoid arrest, may often result in situations that suggest the necessity of pursuit at high speeds or pursuit contrary to traffic laws and regulative signals.

As a general rule, **high-speed pursuit is not recommended or favored when the potential danger to the officer and the general public outweighs the potential advantage of apprehending a fleeing vehicle** by such means.  Stated simply, **pursuit is clearly inappropriate when the pursuit itself endangers life more than the escape of person pursued.**  Delay may also be the wiser choice when the person is known and he or she poses no immediate threat to the community.   On the other hand, it may not be in the best interests of public safety to advocate a policy that would encourage the dangerous driver, the car thief or the fleeing criminal to proceed without the imminent possibility of police intervention.

II. **DEFINITIONS**

    A. *Authorized Police Vehicle*:  A police department issued motor vehicle equipped with operable emergency warning equipment.

    B. *Primary Unit*:  An authorized police vehicle that is the first vehicle behind the pursued vehicle.

    C. *Secondary Unit*:  An authorized police vehicle that is actively involved in the pursuit behind the primary unit as backup.

    D. *Supervisor*:  The Officer-in-Charge or other person-in-charge.

    E. *Vehicular Pursuit*:  An active attempt by an officer in an authorized police vehicle, with emergency warning equipment activated, to apprehend one or more occupants of another moving vehicle, when the officer reasonably believes that the driver of the other moving vehicle is resisting apprehension by increasing the vehicle's speed, intentionally ignoring the officer, or otherwise attempting to elude the officer.

        a. <u>Pursuit</u>

            1. The decision to initiate a motor vehicle pursuit shall be based upon the pursuing officer's conclusion that the immediate danger to the police officer and the public created by the motor vehicle pursuit is ***less than*** the immediate or potential danger to the public, should the occupants of such vehicle being pursued remain at large.

            2. In deciding whether to initiate a motor vehicle pursuit, the officer shall take into consideration the following:

                a. **Seriousness of the offense, what is the driver wanted for?**

                b. Time of day;

                c. Weather conditions;

                d. Road conditions;

                e. Environmental conditions;

                f. Vehicular and pedestrian traffic conditions;

      g. Geographic location;

      h. Population density;

      i. Familiarity with the area;

      j. Vehicle capability and reliability of the pursuing vehicle(s) and the vehicle being pursued;

      k. The officer's personal ability, experience and training;

      l. Visibility and illumination;

      m. Whether the identity of the occupants is known and the immediate apprehension is not necessary to protect the public or police officers and apprehension at a later time is feasible;

      n. Possibility of pursuit resulting in a successful apprehension;

      o. The presence of other persons in the pursuing police vehicle(s).

F. If a motor vehicle pursuit is initiated, the pursuing officer shall continually reconsider the factors listed above. Once made, the decision to pursue is ***not irrevocable.*** Along with the above factors, training, experience and knowledge shall guide the pursuing officer's decision to pursue or not to pursue.

G. Holyoke Police Department vehicles that are carrying anyone other than sworn police officers as passengers are prohibited from joining in a motor vehicle pursuit.

H. Upon the conclusion of a motor vehicle pursuit, officers shall utilize appropriate officer safety tactics. Officers and Supervisors shall be aware of post pursuit management when taking the suspect(s) into custody. They shall be aware of the necessity to utilize only the force they reasonably believe is necessary to take the occupants of the pursued vehicle into custody.

I. Motor vehicle violations shall seldom, if ever, warrant a prolonged pursuit.

    1. Upon engaging in a pursuit, the primary unit and, if involved, secondary unit shall activate emergency lights and siren. All units involved in the pursuit shall wear their seat belts.

    2. The primary unit shall notify the dispatcher or communications center of the location, direction and nature of the pursuit, the description of the pursued vehicle, **the reason for the pursuit**, and, if practicable, the estimated speeds of the vehicles. The officer should keep the dispatcher or communications center updated on the pursuit at regular intervals.

    3. When engaged in a pursuit, officers shall exercise due care for the safety of the public.

      a. The driver of any police department vehicle shall be subject to the provisions of any statute, rule, regulation, ordinance or bylaw relating to the operation or parking of vehicles, including stopping for a school bus with red lights flashing which has stopped to allow passengers to alight or board, except:

          i. the driver may exceed the speed limit if [s]he exercises caution and due regard under the circumstances for the safety of persons and property; and

          ii. the driver may drive through an intersection contrary to traffic signs or signals if [s]he first brings the vehicle to a stop and then proceeds with caution and due regard for the safety of persons and property.

4. An authorized unmarked police vehicle shall relinquish primary unit status immediately upon becoming aware of the participation of an authorized marked police vehicle.

J. <u>Supervisory Responsibilities</u>

1. A commanding officer or supervisor who has been advised of a motor vehicle pursuit will as soon as possible report to dispatch and immediately evaluate the totality of the circumstances and decide, as quickly as possible, whether or not the pursuit should continue pursuant to the criteria of this policy. He or she shall monitor the pursuit until its conclusion, as well as assume the primary command responsibility for the motor vehicle pursuit, or until Holyoke Police Department units terminate the pursuit which is continued by another agency.

2. The commanding officer or supervisor shall be charged with coordinating the operations of the motor vehicle pursuit and shall ensure that the pursuit operations are in compliance with policy.

3. A commanding officer or supervisor shall have the authority to terminate a motor vehicle pursuit at any time. ***A commanding officer or supervisor shall terminate a motor vehicle pursuit when the potential danger to the public outweighs the need for immediate apprehension.*** When a commanding officer or supervisor communicates that the motor vehicle pursuit shall be terminated, all pursuing Holyoke Police Department vehicles shall disengage their emergency strobe lights and siren and resume posted speed limits. Once the motor vehicle pursuit is terminated, no Holyoke Police Department vehicle shall continue to follow or parallel the pursued vehicle.

4. A supervisor must respond to the location where the pursuit concludes in an apprehension or a motor vehicle collision.

5. **<u>If a pursuit is allowed to continue, at the completion the commanding officer or supervisor shall prepare a written analysis of the motor vehicle pursuit.</u>** They will submit their review on an IOC up the chain of command.

6. Supervisors shall be responsible for the thoroughness and accuracy of all the reports associated with the motor vehicle pursuit.

   a. Dispatch will immediately notify the shift commanding officer or supervisor in the building that a pursuit is under way.

      i. Upon becoming aware of the pursuit, the supervisor will report as soon as possible to dispatch and shall immediately evaluate the totality of the circumstances and decide, as quickly as possible, whether or not the pursuit should continue pursuant to the criteria of this policy.

      ii. If the shift commanding officer and/or supervisor concludes that a pursuit should continue, [s]he shall monitor incoming information and coordinate activities as needed to ensure that proper procedures are followed. The shift commanding officer and/or supervisor shall be responsible for the pursuit.

      iii. In exceptional circumstances, a supervisor may authorize officers (in authorized police vehicles) in addition to the primary and secondary units, to engage in the pursuit and/or a parallel pursuit. If the supervisor reasonably believes that there is a substantial likelihood of serious physical injury or death additional officers should not participate.

      iv. The supervisor shall continually reevaluate the need to continue the pursuit.

      v. The shift commanding officer or supervisor is vested with the authority to terminate the pursuit, at any time, especially when [s]he believes that the foreseeable risks to the pursuing officers and to the public, arising from the continued pursuit, are greater than the foreseeable threat to public safety should the pursued vehicle be allowed to escape.

K. <u>The Responsibilities and Limitation of the Primary and Secondary Units</u>

   1. Primary unit

      a. Subject to the direction of a supervisor, the officer operating the primary unit is vested with the authority to decide and direct the pursuit actions.

      b. The officer operating the primary unit shall continually reevaluate and assess the pursuit. The officer shall terminate the pursuit, even in the absence of an order to terminate by a supervisor, when that officer reasonably believes that the foreseeable risks to the officer, the public or others arising from a continued pursuit is greater than the threat to public safety should the pursued vehicle be allowed to escape.

*To Protect and To Serve*
*Page 5 of 11*

    c. Upon receipt of notice to terminate the pursuit from a supervisor, the primary unit shall discontinue the pursuit.

    d. The pursuing officer shall notify the dispatcher or communications center when it is likely that a pursuit will continue into a neighboring jurisdiction.

    e. These procedures and guidelines are to be followed in conjunction with all relevant existing statutes, by-laws, ordinances, department policies and procedures, rules and regulations.

    f. The primary pursuit unit will submit a written report documenting the offense and the pursuit.

2. Secondary unit

    a. Once the pursuit is engaged, the secondary unit shall maintain a safe distance behind the primary unit, but should remain close enough to provide aid and assume radio communications if and when necessary.

    b. Upon receipt of notice to terminate the pursuit from the primary unit and/or a supervisor, the secondary unit shall discontinue the pursuit.

    c. A third, fourth, fifth, etc. Holyoke Police vehicle(s) should not become directly involved in the pursuit. There should not be more than two Holyoke cruisers in line pursuing a suspect unless there are extenuating circumstances and the commanding officer or supervisor has authorized it. If these additional units are utilized and participate, seat belts shall be utilized.

L. <u>Responsibilities of Dispatcher</u>

1. Upon being informed of a pursuit in progress, the dispatcher shall:

    a. Immediately inform the shift commanding officer or supervisor; that supervisor will as soon as possible report to dispatch and determine if the pursuit should be allowed to continue or should be terminated.

        i. the dispatcher shall activate the Vehicular Pursuit Emergency Protocol;

        ii. Receive and record all incoming information on the pursued vehicle;

        iii. Advise all other units that a pursuit is in progress, providing all relevant information;

       iv. Perform relevant record and motor vehicle checks as expeditiously as possible;

       v. Coordinate assistance of other officers under the direction of the supervisor;

       vi. Notify affected law enforcement agencies over appropriate communication systems and seek their assistance if the pursuit is proceeding into another jurisdiction; and

       vii. Notify all affected agencies when a pursuit has been terminated or an apprehension has been made.

M. <u>Intervention Tactics</u>

1. Tire Deflation: Tire deflation devices should be used, when practicable, where there is an agreement between the primary unit and the officer who will deploy the device. Extreme caution shall be exercised in the use of tire deflation devices. Officers in other jurisdictions have been struck and killed by the offender(s) while trying to deploy these devices. The officer deploying the tire deflation device shall only do so when that officer has been trained in its use and believes that the device can be deployed safely.

2. Boxing-In: An active attempt to terminate a pursuit by surrounding the pursued vehicle with the primary, secondary, or other units which are then slowed to a stop.

    a. <u>Boxing-in may be utilized only when there is a determination that the pursued vehicle must be immediately stopped because the driver and/or occupants of the vehicle pose a clear and immediate threat of death or serious physical injury to the public and/or other occupants of the pursued vehicle</u>. This tactic may be utilized only when authorized by a supervisor and it is reasonable to believe that allowing the vehicle to escape will not reduce the perceived risk of death or serious physical injury to the public and/or the occupants of the pursued vehicle. Boxing-in may not be utilized when tire deflation devices are a viable option.

3. Heading Off: An active attempt to terminate a pursuit by the primary unit pulling ahead of the pursued vehicle in a manner to force the pursued vehicle to come to a stop or risk collision with the primary unit.

    a. Heading off may be utilized only when there is a determination that the pursued vehicle must be immediately stopped because the driver and/or occupants of the vehicle pose a clear and immediate threat of death or serious physical injury to the public and/or other occupants of the pursued vehicle. This tactic may be utilized only when authorized by a supervisor and it is reasonable to believe that allowing the vehicle to escape will not reduce the perceived risk of death or serious physical injury to the public and/or the occupants of the pursued vehicle. Heading off may not be utilized when the use of tire deflation devices is a viable option.

4. Roadblocks: An active attempt to terminate a pursuit through the use of a restriction or obstruction in the roadway that is intended to prevent free passage of motor vehicles on a roadway.

   a. Roadblocks may be utilized only when there is a determination that the pursued vehicle must be immediately stopped because the driver and/or occupants of the vehicle pose a clear and immediate threat of death or serious physical injury to the public and/or other occupants of the pursued vehicle. This tactic may be utilized only when authorized by a supervisor and it is reasonable to believe that allowing the vehicle to escape will not reduce the perceived risk of death or serious physical injury to the public and/or the occupants of the pursued vehicle. Roadblocks may not be utilized when the use of tire deflation devices is a viable option.

   b. A supervisor shall be present at the scene and direct type, location and setup of the roadblock. Police vehicles being utilized as barricades shall display full emergency lights, and no one shall remain in the vehicle(s). The roadblock must be established in such a location as to allow vehicles approaching at high speeds sufficient time to stop, and not to cause a collision. Any roadblock should provide an "escape route" should the vehicle refuse to stop. Officers should position themselves a safe distance from the barricade, with appropriate site observation.

5. Vehicle Contact Action: Vehicle contact action is an active attempt by the primary unit and/or other pursuit vehicles to terminate a pursuit through the use of deliberate contact between the moving police vehicle and the moving pursued vehicle.

   a. Vehicle contact action **may only be utilized when the use of deadly force is justified** and such action is taken in conformance with the departmental policy on the *Use of Deadly Force*. This tactic may not be utilized when any of the tactics authorized in this section are viable options.

6. Use of firearms

   a. Discharging a firearm at a moving vehicle by an officer is prohibited except to defend said officer or another when the occupant of the pursued vehicle is employing deadly force, which the officer reasonably perceives as an immediate threat of death or physical injury and the officer reasonably believes that [s]he will not endanger innocent persons.

      NOTE: Shooting at a fleeing vehicle that is going away from the officer and is no longer an immediate threat is prohibited. Under such circumstances, officers should be aware of the potential inability of a bullet to penetrate metal or glass surfaces of an automobile and the likelihood of ricocheting bullets causing injury to innocent persons.

   b. Firearms shall not be discharged by an officer while driving or occupying a vehicle engaged in high-speed pursuit except to defend him/herself or

others when being fired upon or when the occupants of the vehicle being pursued have committed a felony in which deadly force was used and the officer has personal knowledge or positive information that the occupants are the actual offenders, that their immediate apprehension is necessary for public safety and that there are no other means available to prevent their escape and secure their arrest. In all such cases every precaution shall be taken to ensure the safety of the general public in the vicinity.

7. Hostage involved vehicle pursuits.

   a. When a member of the department becomes aware that a hostage is, or may be, in a pursued vehicle, the officer-in-charge shall be advised immediately. All available information shall be reported, including a physical description of the hostage, and the exact location of the hostage within the vehicle (if known).

      i. The officer-in-charge shall ensure that all hostage-related information is immediately broadcast. The fact that a hostage may be involved in a pursuit shall be periodically transmitted during subsequent pursuit status broadcasts.

      ii. It must be emphasized that the safety of the hostage must be the primary consideration in determining the tactics that will be employed to affect the release of the hostage <u>and</u> apprehend the suspect(s).

   b. In instances where the taking of a hostage has not been confirmed, the officer-in-charge shall attempt to obtain additional information from the original reporting person via telephone. If a call back number is not available, or the reporting person cannot be contacted, the officer-in-charge shall assign a unit to respond to the scene of the initial occurrence to verify the taking of a hostage.

   c. The primary pursuit vehicle shall continue to broadcast information concerning: the hostage's position within the vehicle; description of the hostage, when known; suspect information; and, if available, information regarding the type of weapon the suspect possesses.

   d. The involvement of a hostage in the pursuit magnifies the importance of the officer-in-charge maintaining maximum control and ensuring that nonessential units do not become involved in the pursuit.

N. <u>Inter-Jurisdictional Pursuits</u>

   1. Once a pursuit leaves the jurisdiction boundaries of the City of Holyoke, serious consideration shall be given by the officers involved and the commanding officer or supervisor in charge, to terminating the pursuit.

2. Under extenuating circumstances, pursuit may continue into another jurisdiction when done so in conformance with applicable Massachusetts General Laws, department policies, and inter-jurisdictional agreements.

   a. Outside the Commonwealth: On fresh and continued pursuit, a police officer may pursue and arrest a person who has committed a felony into any neighboring state.
   b. Any arrest outside the Commonwealth should not be directly brought back to Holyoke.
   c. Any arrest outside the Commonwealth should be turned over to the law enforcement authority in that jurisdiction.  The arrestee shall have to be properly extradited back to the Commonwealth.
   d. Within the Commonwealth:  A police officer may make an arrest outside his/her jurisdiction on fresh and continued pursuit provided:

      i. The offense is one for which the officer would have the right of arrest without a warrant within his/her jurisdiction;

      ii. The offense was committed in the officer's presence; and

      iii. The offense was committed within the officer's jurisdiction.

3. When this department has initiated a pursuit, timely notification of a pursuit in progress shall be provided to any other jurisdiction into which the pursuit enters. Merely notifying another jurisdiction that a pursuit is in progress is not a request to join the pursuit.  The department shall advise if assistance is necessary. Whenever the pursuing officers are unfamiliar with the roadways and terrain of the jurisdiction into which the pursuit has entered, or whenever radio communication is lost, the pursuing officers shall, when possible seek the assistance of and be prepared to relinquish the pursuit to, the other agency.

O. Generally, officers shall not become involved in another agency's pursuit unless specifically authorized by their supervisor.  The Holyoke commanding officer or supervisor shall evaluate the circumstances and determine if it conforms to our pursuit policy.  That commanding officer or supervisor shall determine the level of participation by Holyoke in an outside agency pursuit in our jurisdiction.

P. <u>After-Action Reporting</u>

   1. Whenever an officer engages in a pursuit (primary) [s]he shall file written reports on the appropriate forms detailing the circumstances.  The commanding officer or supervisor shall file a written analysis of the pursuit through an IOC up the chain of command.  These reports shall be evaluated by a superior officer to determine if there has been compliance with departmental policies and regulations.

   2. The department shall annually analyze pursuit activities for the purpose of identifying any improvements in this pursuit procedure and shall implement

      modifications to this procedure if warranted. A review of incidents may reveal patterns or trends that indicate training needs and/or policy modifications.

3. The department shall maintain for three years the original or a copy of the radio transmission recordings of pursuits involving personal injury or death.

4. If a pursuit involves a crash, the commanding officer or supervisor shall be responsible for conducting the accident investigation.

5. Any pursuit that involved a crash that results in life threatening injuries and/or a fatality, the commanding officer or supervisor shall notify the District Attorney's Office and may request the help of the Massachusetts State Police to conduct the investigation. If assigned, the primary MSP investigator will not be responsible for determining violations of Holyoke policy or rules, only criminal or civil motor vehicle liability on the part of the operators.

**DRIVER AND/OR PASSENGER NEGLIGENCE**

If negligence or noncompliance with the requirements of this order is displayed, appropriate corrective or disciplinary action may be initiated by department authorities. Noncompliance may not exempt an employee from receiving benefits in relation to an injury sustained on duty in a police vehicle.